**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Christopher Howard,

          Petitioner,

vs.

Charles L. Ryan, et al.,

          Respondents.

CV11-0496-TUC-FRZ (JR)

**REPORT AND RECOMMENDATION**

Pending before the Court is Christopher Howard's Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254.  In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation.  As explained below, the Magistrate Judge recommends that the District Court, after an independent review of the record, dismiss the Petition with prejudice.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Howard was indicted in Pima County in May 2009 in CR 20091662 on one charge of fraudulent scheme and artifice and eight charges of forgery.  *Answer*, Ex.

1

A, pp. 1-2.   In June 2009, Howard was again indicted in Pima County in CR 20092057 on two charges of aggravated taking the identity of another, three charges of false statement as to financial condition or identity, one charge of taking the identity of another, and one charge of fraudulent scheme and artifice.  *Id*., Ex. B, pp. 1-2.   In July 2009, Howard entered into a plea agreement covering both criminal cause numbers, in which he pled guilty to one charge of fraudulent scheme and artifice in the first case and one charge of aggravating taking the identity of another in the second case.  *Id*., Exs. C (Plea Agreement), D (Change of Plea).   On August 28, 2009, the trial court sentenced Howard to concurrent terms totaling 6.5 years imprisonment.  *Id*., Ex. E (Sentencing Minute Entry).

In October 2009, Howard filed a notice of post-conviction relief pursuant to Rule 32, Ariz.R.Crim.P.  *Id*., Ex. F.  On October 23, 2009, the trial court appointed counsel and ordered that Howard's petition be filed within 60 days of receiving the transcripts.  *Id*., Ex. G.  On November 3, 2009, Howard filed another notice of post-conviction relief.  *Id*., Ex. H.  Howard never filed a petition for post-conviction relief and, by order filed on February 25, 2010, the trial court dismissed Howard's notice of post-conviction relief.  *Id.*, Ex. I.  However, in March 2010, Howard's counsel filed a Rule 32 petition in which she avowed she could find no issues for review. *Id.*, Ex. J. The trial court then granted Howard leave to file a pro per Rule 32 petition by April 26, 2010.  *Id*., Ex. K.  When Howard failed to timely file his pro per petition, the trial court, by order filed on May 4, 2010, once again dismissed his petition.  *Id*., Ex. L.

2

1    Howard filed a motion to reconsider that ruling, which the trial court denied

2    on June 8, 2010.  *Id.*, Exs. M, N.  A few months later, Howard sent a letter to a Pima

3    County Superior Court judge in which he argued that his failure to timely file his

4    Rule 32 petition was not his fault.  *Id.*, Ex. O.  The trial court construed the letter as a

5    motion for rehearing under Rule 32.9, Ariz.R.Crim.P., vacated its previous order

6    dismissing the petition, and again granted Howard an extension to file a pro se Rule

7    32 petition by October 18, 2010.  *Id.*

8    Howard timely filed his pro per Rule 32 petition on October 7, 2010.  *Id.*, Ex.

9    P.  The trial court found that Howard had failed to establish any colorable claim for

10   relief, and by order filed on January 7, 2011, summarily dismissed the petition.  *Id.*,

11   Ex. Q.  Howard then filed a petition for review by the Arizona Court of Appeals.  *Id.*,

12   Ex. R.  The court of appeals dismissed the petition as untimely.  *Id.*, Ex. S.  Howard

13   then filed a motion for reconsideration which the court of appeals granted.  *Id.*, Exs.

14   T, U.  By Memorandum Decision filed June 30, 2011, the Court of Appeals granted

15   review, but denied relief and adopted the decision of the trial court.  *Id.*, Ex. V.

16   Howard did not seek review of that decision in the Arizona Supreme Court and the

17   mandate was issued on September 23, 2011.  *Id.*, Ex. W.

18   The instant petition was deposited in the prison mail system on July 28, 2011.

19   (Doc. 1.)  Howard alleges four grounds for relief.  In Ground One he alleges that his

20   lawyer failed to investigate certain e-mail accounts and transactions that would have

21   established Howard's innocence.  In Ground Two he alleges that evidence obtained

22   by an unconstitutional search and seizure was improperly admitted before the grand

3

jury and at trial.[1]   In Ground Three, Howard alleges that his pre-trial statements obtained in violation of his right to counsel were improperly admitted at trial.   In Ground Four, Howard alleges his counsel provided ineffective assistance by urging him to enter into the plea agreement.

## II.   LEGAL DISCUSSION

### A. Timeliness of the Petition

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one year statute of limitations to file a petition for writ of habeas corpus.   28 U.S.C. § 2244(d)(1).   Petitions filed beyond the one-year limitations period must be dismissed.  *Id.* The statute provides in pertinent part that:

> (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

---

[1] In Grounds Two and Three, Howard references the use of evidence and statements against him "at trial."   However, the record establishes that Howard entered into a plea agreement and waived his right to a trial.  *Answer*, Exs. C (Plea Agreement), X, pp. 5-6 (waiver of right to trial at change of plea hearing).  In Ground Two, however, Howard also argues that the evidence was improperly admitted before the grand jury. Giving Howard the benefit of the doubt, the Court will construe both claims as directed at the grand jury proceedings and the indictment.

1   recognized by the Supreme Court and made retroactively applicable to
2   cases on collateral review; or

3   (D) the date on which the factual predicate of the claim or claims
    presented could have been discovered through the exercise of due
4   diligence.

5   (2) The time during which a properly filed application for State post-
    conviction or other collateral review with respect to the pertinent
6   judgment or claim is pending shall not be counted toward any period of
    limitation under this subsection.

7   28 U.S.C. § 2244(d).

8        Although his Rule 32 petitions were twice dismissed and his petition for

9   review by the Arizona Court of Appeals was untimely filed, each time Howard

10  sought reconsideration of the dismissals and his pleadings were reinstated.  As such,

11  Howard had an application for post-conviction review pending until the Court of

12  Appeals denied relief in June 2011.  Howard filed the instant petition less than two

13  months later.  As such, and as Respondents recognize, the petition was timely filed.

14       **B.    Waiver Based on Guilty Plea**

15       As a threshold matter, Respondents contend that Howard waived Grounds

16  One, Two and Three of the petition by signing a written plea agreement.  The general

17  rule is that a guilty plea bars a petitioner from obtaining federal habeas corpus relief

18  on the basis of pre-plea constitutional violations.  *Hudson v. Moran*, 760 F.2d 1027,

19  1029–30 (9th Cir.1985). Thus, Howard's claims that his trial lawyer was ineffective

20  for failing to investigate the email and credit transactions and that evidence was

21  improperly admitted against him are unavailable as grounds for habeas relief.  *See*

22  *Tollett v. Henderson*, 411 U.S. (1973) ("while claims of prior constitutional

5

1  deprivation may play a part in evaluating the advice rendered by counsel, they are not

2  themselves independent grounds for federal collateral relief.").  The rule is justified

3  because "a guilty plea represents a break in the chain of events which has preceded it

4  in the criminal process," and a defendant may therefore, "only attack the voluntary

5  and intelligent character of the guilty plea by showing that the advice received from

6  counsel was not within [the range of competence demanded of attorneys in criminal

7  cases.]" *Id*.  Thus, Grounds One, Two and Three do not present independent grounds

8  for relief if Howard's plea is determined to have been voluntary and intelligent.

9        **C.**    **Exhaustion and Procedural Default**

10       Respondents contend that Grounds One, Two and Three were not properly

11  exhausted and are barred from habeas review.  A state prisoner must exhaust the

12  available state remedies before a federal court may consider the merits of his habeas

13  corpus petition.  *See* 28 U.S.C. § 2254(b)(1)(A); *Nino v. Galaza,* 183 F.3d 1003,

14  1004 (9th Cir.1999).  "[A] petitioner fairly and fully presents a claim to the state

15  court for purposes of satisfying the exhaustion requirement if he presents the claim:

16  (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the

17  proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657,

18  668 (9th Cir. 2005) (citations omitted).

19       Exhaustion requires that a habeas petitioner present the substance of his

20  claims to the state courts in order to give them a "fair opportunity to act" upon these

21  claims.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999).  "To exhaust one's

22  state court remedies in Arizona, a petitioner must first raise the claim in a direct

1   appeal or collaterally attack his conviction in a petition for post-conviction relief

2   pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then

3   present his claims to the Arizona Court of Appeals. *See Swoopes v. Sublett,* 196 F.3d

4   1008, 1010 (9th Cir. 1999).

5      Additionally, a state prisoner must not only present the claims to the proper

6   court, but must also present them fairly.  A claim has been "fairly presented" if the

7   petitioner has described the operative facts and federal legal theories on which the

8   claim is based.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1971); *Rice v. Wood*, 44

9   F.3d 1396, 1403 (9th Cir. 1995).  "Our rule is that a state prisoner has not 'fairly

10  presented' (and thus exhausted) his federal claims in state court unless he specifically

11  indicated to that court that those claims were based on federal law."   *Lyons v.*

12  *Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), amended on other grounds, 247 F.3d

13  904 (9th Cir. 2001).  A petitioner must alert the state court to the specific federal

14  constitutional guaranty upon which his claims are based, *Tamalini v. Stewart*, 249

15  F.3d 895, 898 (9th Cir. 2001), however, general appeals in state court to broad

16  constitutional principles, such as due process, equal protection, and the right to a fair

17  trial, are insufficient to establish fair presentation of a federal constitutional claim.

18  *Lyons*, 232 F.3d at 669.  Moreover, it is not enough that a petitioner presented to the

19  state court all the facts necessary to support an inadequately identified federal claim

20  or that a "somewhat similar" state law claim was raised.  *Baldwin v. Reese*, 541 U.S.

21  27, 28 (2004); *Shumway v. Payne*, 223 F.3d 982, 988 (9th Cir. 2000) (mere similarity

22  between a claim of state and federal error insufficient to establish exhaustion).

7

"Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory." *Castillo v. McFadden*, 399 F.3d 993, 1003 (9th Cir. 2005).

Claims may be procedurally defaulted and barred from federal habeas review in a variety of circumstances. If a state court expressly applied an adequate and independent state procedural bar when the petitioner attempted to raise the claim in state court review of the merits of the claim by a federal habeas court is barred. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991). Arizona courts have been consistent in the application of the state's procedural default rules. *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (holding that Ariz.R.Cirm.P. 32.2(a) is an adequate and independent procedural bar). In Arizona, claims not previously presented to the state courts on either direct appeal or collateral review are generally barred from federal review because any attempt to return to state court to present them would be futile unless the claims fit into a narrow range of exceptions. *See Ariz.R.Crim.P.* 32.1(d)-(h), 32.2(a) (precluding claims not raised on direct appeal or in prior post-conviction relief petitions), 32.4(a) (time bar), 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Because these rules have been found to be consistently and regularly followed, and because they are independent of federal law, either their specific application to a claim by an Arizona court, or their operation to preclude a return to state court to exhaust a claim, will procedurally bar subsequent review of the merits of such a claim by a federal habeas court. *Stewart*, 536 U.S. at 860; *Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (Rule 32, Ariz.R.Crim.P.

1  is strictly followed); *State v. Mata*, 916 P.2d 1035, 1050-52 (Ariz. 1996) (waiver and

2  preclusion rules strictly applied in postconviction proceedings).

3        A federal court may not consider the merits of a procedurally defaulted claim

4  unless the petitioner can demonstrate cause for his noncompliance and actual

5  prejudice, or establish that a miscarriage of justice would result from the lack of

6  review.  *See Schlup v. Delo*, 513 U.S. 298, 321 (1995).  To establish cause, a

7  petitioner must point to some objective factor external to the defense impeded his

8  efforts to comply with the state's procedural rules.  *Dretke v. Haley*, 541 U.S. 386,

9  393-94 (2004).  "[C]ause is an external impediment such as government interference

10  or reasonable unavailability of a claims factual basis."  *Robinson v. Ignacio*, 360 F.3d

11  1044, 1052 (9th Cir. 2004) (citations omitted).  Ignorance of the state's procedural

12  rules or the lack of legal training do not constitute legally cognizable "cause" for a

13  petitioner's failure to fairly present a claim.  *Hughes v. Idaho State Board of*

14  *Corrections*, 800 F.2d 905, 908-10 (9th Cir. 1986); *Schneider v. McDaniel*, 674 F.3d

15  1144, 1153 (9th Cir. 2012).  "Prejudice" is actual harm resulting from the

16  constitutional violation or error.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir.

17  1984); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996).

18        Alternatively, a federal court may review the merits of a procedurally

19  defaulted claim where a petitioner can establish that a "fundamental miscarriage of

20  justice" would otherwise result.  *Schlup v. Delo*, 513 U.S. at 327.  A fundamental

21  miscarriage of justice exists when a constitutional violation resulted in the conviction

22  of one who is actually innocent.  *Id*.

1

### 1.    Analysis of Claims

In his Rule 32 petition and his brief filed in the appeal of the denial of the petition, Howard made no reference or mention to any federal authority in support of Grounds One, Two, and Three.  *Answer*, Exs. P, R.   Because he failed to do, he has not 'fairly presented' (and thus exhausted) his federal claims in state court.  *Lyons*, 232 F.3d at 668 (9th Cir. 2000).   Thus, these claims are subject to review only if Howard can show cause for his failure to exhaust and resulting prejudice.

### 2.    Cause and Prejudice

Respondents contend and Howard does not contradict, that Howard is procedurally barred from now raising his claims in State court.  *See* Ariz.R.Crim.P. 32.2(a)(3) ("A defendant shall be precluded from relief under [Rule 32] based upon any ground . . . [t]hat has been waived at trial, on appeal, or in any previous collateral proceeding.")  *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).   As such, the merits of the claims need not be addressed unless Howard establishes cause and prejudice or that a fundamental miscarriage of justice has occurred.   Howard does not argue that cause and prejudice exist in this case and, therefore, the claims are not subject to review.

### D.    Merits

Under the AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2)

10

1  based on an unreasonable determination of the facts in light of the evidence presented

2  in the State court proceeding.   28 U.S.C. § 2254(d).   *See Williams v. Taylor*, 120

3  S.Ct. 1495 (2000).  A state court's decision can be "contrary to" federal law either (1)

4  if it fails to apply the correct controlling authority, or (2) if it applies the controlling

5  authority to a case involving facts "materially indistinguishable" from those in a

6  controlling case, but nonetheless reaches a different result.  *Van Tran v. Lindsey*, 212

7  F.3d 1143, 1150 (9th Cir. 2000).   In determining whether a state court decision is

8  contrary to federal law, the court must examine the last reasoned decision of a state

9  court and the basis of the state court's judgment.  *Packer v. Hill*, 277 F.3d 1092, 1101

10  (9th Cir. 2002).  A state court's decision can be an unreasonable application of federal

11  law either (1) if it correctly identifies the governing legal principle but applies it to a

12  new set of facts in a way that is objectively unreasonable, or (2) if it extends or fails

13  to extend a clearly established legal principle to a new context in a way that is

14  objectively unreasonable.  *Hernandez v. Small*, 282 F.3d 1132 (9th Cir. 2002).

### 1.     Ground Four

16       A guilty plea based on an attorney's advice may be involuntary if the attorney

17  rendered ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 56–57

18  (1985); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  The *Strickland* test applies

19  to a petitioner's challenge of his guilty plea based upon ineffective assistance of

20  counsel. *Washington v. Lampert*, 422 F.3d 864, 872 (9th Cir.2005) (citing *Hill*, 474

21  U.S. 52).  In the plea context, "the ineffectiveness inquiry probes whether the alleged

22  ineffective assistance impinged on the [petitioner's] ability to enter an intelligent,

1  knowing and voluntary plea of guilty." *Lambert v. Blodgett*, 393 F.3d 943, 980 (9th

2  Cir.2004).

3      To prevail on a claim of ineffective assistance of counsel, Howard must show

4  both deficient performance and prejudice in order to establish that counsel's

5  representation was ineffective.  466 U.S. at 687.  In the context of habeas claims

6  evaluated under § 2254(d)(1) standards, the question "is not whether a federal court

7  believes the state court's determination was incorrect but whether that determination

8  was unreasonable– a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S.

9  465, 473 (2007).

10      In evaluating counsel's advice concerning a plea offer under *Strickland's*

11  performance prong, a reviewing court must "respect the latitude *Strickland* requires"

12  by according substantial deference to counsel's judgment.  *Premo*, 131 S.Ct. at 741,

13  742.  The question is not "whether a court would retrospectively consider counsel's

14  advice to be right or wrong, but . . . whether that advice was within the range of

15  competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397

16  U.S. 759, 771 (1970); *Hill*, 474 U.S. at 56.

17      The prejudice component requires a showing of a reasonable probability that,

18  but for counsel's unprofessional errors, the petitioner would not have pleaded guilty

19  and would instead have insisted on going to trial.  *Premo*, 131 S.Ct. at 743; *Hill*, 474

20  U.S. at 59.  Federal habeas courts must exercise caution in evaluating the prejudice

21  prong "in light of the uncertainty inherent in plea negotiations." *Premo*, 131 S.Ct. at

22  743.

1    In Ground Four, Howard claims his counsel was ineffective because she did

2    "absolutely none of the things asked of her by me."  The specific failures he alleges

3    include her failure to act on his claim that he did not know the check he had cashed

4    was fraudulent, that she did not use email evidence that would have indicated

5    somebody else was at fault, that she guaranteed him a sentence of 3.5 years if he

6    entered the plea and that she threatened him with a 9 or 10 year sentence if he did

7    not.

8    In its decision denying this claim, which was subsequently adopted by the

9    Arizona Court of Appeals, the trial court, addressing *Strickland's* performance prong,

10   evaluated the impact of Howard's counsel's alleged missteps on the plea.  The court

11   explained:

12          A lawyer's guarantee of a particular sentence is not reflected in
      the plea agreement, as the petitioner alleges here, would present a
13    question of the validity of the plea.  But the court finds the petitioner's
      account not credible and contradicted by the record.  The petitioner
14    affirmed at the time of the plea that he understood its terms and the
      possible sentence it envisioned and that no one had threatened him or
15    promised him anything outside of the plea agreement, particularly
      relating to the sentence.  If anything the recorded July 14 disagreement
16    between the petitioner and [his counsel] regarding the factual basis for
      the plea reflects the petitioner's willingness to speak up and set the
17    record straight rather than his acquiescence in the face of alleged
      threats.  The petitioner ultimately admitted to the actions giving rise to
18    the charge and took responsibility for those actions at sentencing; it
      was only after he received a sentence longer than he apparently
19    expected that he recanted his admission and challenged the validity of
      the plea.  His statement upon sentencing demonstrates an understanding
20    that the court maintained the discretion to decide his sentence within
      the ranges set forth in the plea agreement.  Had he been promised a
21    shorter sentence, nothing prevented him from clarifying as much on the
      record at either hearing, including his purported assumption that [his

22

13

counsel] had "cleared" some unwritten guarantee with the state and the court.

The petitioner may well have been initially resistant to the plea deal, and [his counsel] may well have strongly urged him to accept it, properly invoking the possibility of a harsher sentence should the case go to trial. No doubt, having received his sentence, the petitioner now regrets pleading guilty. But such facts, if true, do not invalidate the plea or demonstrate threats. The record is clear: [his counsel] did not guarantee the petitioner a 3.5-year sentence. The court was correct in finding that "the defendant knowingly, intelligently and voluntarily" pleaded guilty. The petitioner's counsel was not deficient.

*Answer*, Ex. Q, pp. 3-4 (internal citation omitted). The state court's findings are not contrary to or an unreasonable application of clearly established federal law.

Howard claims he would not have entered into the plea agreement if his counsel had not threatened him and had done more in preparing his defense. However, the state court's recitation of the events at his change of plea hearing show that he was fully aware of the implications of the plea agreement and was more than willing to speak up when he felt the need to do so. At the change of plea hearing, Howard answered "yes" when asked if he intended to enter into a plea agreement. *Answer*, Ex. X, p. 3. He again responded affirmatively when asked if he understood that the sentencing range available under the terms of the agreement were from 5 to 12.5 years in case number CR-20091662, and from 3.5 to 8.75 in case number CR-20092057. *Id.* Howard also indicated that he had read the agreement and it had also been explained to him. *Id.*, p. 5. The trial court then asked if anyone had made any promises or threats of force or intimidation to get him to plead guilty and he answered "no." *Id.* Howard was then specifically asked if anyone had promised him

14

1   "exactly what your sentence would be," and he again answered no and said he

2   understood that the court would make the sentencing decision.  *Id*., p. 6-7.   Then,

3   after some back and forth with the court about the factual basis for the plea, with

4   Howard actively participating in the discussion with the court, he admitted to

5   assisting in the production of fraudulent checks.  *Id*.,   Howard then admitted to

6   obtaining credit cards under the name Patrick Warren and using the cards to

7   fraudulently charge over $20,000.00.  *Id*., p. 13.  After taking the pleas, the court

8   asked Howard if he understood all that had happened in the hearing and he replied,

9   "yes."  *Id*., p. 16.  When asked if he wished to speak at sentencing, Howard

10  apologized to the victims of his fraud and accepted responsibility for what he had

11  done. *Answer*, Ex. Y, p. 8.

12      Considering the facts and representations reflected in the transcripts of

13  Howard's change of plea and sentencing hearing, there is no doubt that the trial court

14  reasonably applied the *Strickland* standards in denying Howard's Rule 32 petition.

15  The trial court's determination that Howard's lawyer was not ineffective, and that his

16  plea was knowing and voluntary, is fully supported by the record and is not contrary

17  to or an unreasonable application of established federal law.  Accordingly, Howard

18  has failed to show that there is a reasonable probability that, "but for counsel's errors,

19  he would not have pleaded guilty and would have insisted on going to trial."  *Hill*,

20  474 U.S. at 57.  His § 2254 petition should therefore be dismissed with prejudice.

21

22

1    **III.    RECOMMENDATION**

2    Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the

3    District Court, after its independent review, **deny** Howard's Petition for Writ of

4    Habeas Corpus (Doc. 1).

5    This Recommendation is not an order that is immediately appealable to the

6    Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1),

7    Federal Rules of Appellate Procedure, should not be filed until entry of the District

8    Court's judgment.

9    Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and

10   file written objections within fourteen days of being served with a copy of the Report

11   and Recommendation. A party may respond to the other party's objections within

12   fourteen days. No reply brief shall be filed on objections unless leave is granted by

13   the district court. If objections are not timely filed, they may be deemed waived. If

14   objections are filed, the parties should use the following case number: CV 11–496–

15   TUC–FRZ.

16   Dated this 26th day of July, 2013.

17

18

19   Jacqueline M. Rateau
     United States Magistrate Judge

20

21

22